United States District Court
Southern District of Texas
**ENTERED**
October 27, 2025
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | |
|---|---|
| DUKE OBARO, § § Plaintiff. § § V. § § MOSAIC RESIDENTIAL NORTH § CONDOMINIUM ASSOCIATION, *et al.*, § § § Defendants. § | CIVIL ACTION NO. 4:23-cv-01249 |

## OPINION AND ORDER

Pending before me is a motion for summary judgment filed by Defendant Mosaic Residential North Condominium Association (the "Association"). *See* Dkt. 34. Having considered the summary judgment briefing, the record, and the applicable law, I grant the motion in part and deny the motion in part.

## BACKGROUND

The Mosaic Residential North Condominium (the "Mosaic") is a high-rise luxury condominium building in Houston, Texas. In 2014, Plaintiff Duke Obaro purchased Unit 11002 (the "Unit") at the Mosaic. This dispute arises out of a non-judicial foreclosure sale of the Unit conducted by the Association.

All condominium owners at the Mosaic, including Obaro, are subject to the Declaration of Condominium for Mosaic Residential North Condominium (the "Declaration"). The Declaration requires owners to pay, among other things: (i) annual assessments or charges, (ii) special assessments relative to the community, and (iii) specific assessments relative to each individual unit. The Declaration creates a continuing lien on each unit to secure payment of the assessments and other charges, including interest, late fees, legal fees, collection costs, reimbursements, delinquency, and other charges. Relevant here, the

Declaration gives the Association the right to foreclose on the lien in accordance with Texas law.

On September 16, 2022, Vivian Tomlinson, an attorney appointed by the Association to serve as trustee and enforce the lien, notified Obaro in writing that he owed $9,875.98 for unpaid maintenance assessments, late fees, collection costs, and legal fees. *See* Dkt. 34-10. Tomlinson threatened to foreclose on the Unit unless Obaro paid the full amount outstanding within 45 days. On December 9, 2022, Tomlinson sent Obaro another letter, informing him that the Unit would be sold at a foreclosure sale on January 3, 2023, unless Obaro paid his debt before that date. *See* Dkt. 34-6.

The foreclosure sale occurred on January 3, 2023. Fairport Ventures, LLC purchased the Unit for $171,000. The purchase price satisfied the lien and associated sale costs. After the sale, Tomlinson sent Obaro a letter detailing the outcome of the sale, informing him of the excess proceeds and his right to redemption. Obaro did not exercise his right to redemption. The $155,702.86 in excess proceeds have been deposited into the court's registry.

On April 3, 2023, Obaro filed suit against Mosaic, Fairport, and John Does 1–5. In his Complaint, Obaro brings the following causes of action: (1) Sale is Set Aside or Voided (All Defendants), (2) Negligence (the Association), (3) Breach of Contract (the Association), (4) Breach of Fiduciary Duty of Care (the Association), and (5) Preservation of Redemption Right (Fairport and the Association). The Association has moved for summary judgment, and Fairport has joined the Association's Motion for Summary Judgment. *See* Dkt. 38 at 2. Although the Association seeks summary judgment on all of Obaro's claims, the Association does not advance any argument on the fifth claim for relief—Preservation of Redemption Right. Accordingly, I only address claims one through four.

## LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as

a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists when there is evidence sufficient for a rational trier of fact to find for the non-moving party." *Schnell v. State Farm Lloyds*, 98 F.4th 150, 156 (5th Cir. 2024) (quotation omitted).

The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the movant makes such a showing, then "the burden shifts to the non-movant to produce evidence of the existence of such an issue for trial." *Brandon v. Sage Corp.*, 808 F.3d 266, 270 (5th Cir. 2015) (quotation omitted). The nonmoving party "must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial to avoid summary judgment." *Id.* (quotation omitted). I "may not . . . evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes." *In re Green*, 968 F.3d 516, 520 (5th Cir. 2020) (quotation omitted). I "view all facts and inferences in the light most favorable to the nonmoving party." *Treme v. St. John the Baptist Par. Council*, 93 F.4th 792, 796 (5th Cir. 2024) (quotation omitted).

**OBJECTIONS TO SUMMARY JUDGMENT EVIDENCE**

Before considering the merits of the summary judgment motion, I must address objections the Association has lodged to the nine exhibits offered by Obaro in his summary judgment response.

Two of the exhibits are declarations signed by Obaro's lawyer, Deola T. Ali. *See* Dkts. 36-8 and 36-9. The Association objects, among other things, that the declarations "contain[] hearsay, improper legal conclusions, and [are] an effort to inject [Obaro's] counsel as a fact witness in the case." Dkt. 37 at 3. Although I overrule the Association's objections to Ali's declarations, I must comment on Ali's apparent involvement as a fact witness in this case. Ali has represented Obaro since he bought the Unit in 2014. Based on my review of the summary judgment evidence, Ali is the author or recipient of virtually every communication between Obaro and the Association. It is hard to imagine this case proceeding to trial

3

without Ali taking the stand to testify on his client's behalf. Texas Disciplinary Rule of Professional Conduct 3.08 prohibits an attorney from serving as both an advocate and a witness in the same case. "Rule 3.08 is grounded principally on the notion that the jury may become confused as to what is testimony and what is argument when one person acts as both an advocate and a witness." *Davis v. Centurylink, Inc.*, No. 3:22-cv-00038, 2023 WL 1787734, at *3 (S.D. Tex. Feb. 6, 2023). At a September 24, 2025, hearing, I raised the Rule 3.08 issue with Ali. He represented that his client is prepared to obtain new counsel in the event this case proceeds to trial. To that end, Obaro should promptly take steps to retain new counsel. I will allow Ali to represent Obaro until the trial of this case commences. *See id.* ("[C]ourts routinely allow a lawyer likely to be a witness to represent a client in pretrial proceedings but prohibit that same lawyer from serving as counsel at trial.") (collecting cases).

The Association also objects to two August 27, 2025 estimates of the Unit's value obtained from commercial internet websites. One is from homes.com. *See* Dkt. 36-6 at 1. The other is from realtor.com. *See id.* at 2. The Association objects to these documents "as hearsay, [an] improper attempt at injection of expert testimony regarding value, and lack of authentication." Dkt. 37 at 4–5. These objections are sustained. It is well-established that commercial website valuations, like those from homes.com and realtor.com, constitute hearsay and should be excluded on that basis. *See Mosely v. NewRez Mortg. LLC*, No. 4:21-cv-396, 2022 WL 1750635, at *3 (S.D. Tex. May 4, 2022); *Guerrero v. Mambo Seafood #1, Inc.*, No. CV H-19-3059, 2020 WL 10787426, at *4 (S.D. Tex. Oct. 19, 2020).

As to the Association's objections to the other exhibits offered by Obaro, I deny them as moot because "this evidence does not affect the disposition of the summary judgment motion." *Lilly v. SSC Houston Sw. Operating Co.*, No. 4:20-cv-03478, 2022 WL 35809, at *3 n.2 (S.D. Tex. Jan. 4, 2022); *see also Jones v. United Parcel Serv., Inc.*, No. 3:06-cv-1535, 2008 WL 2627675, at *6 (N.D. Tex. June 30, 2008) (denying objections to summary judgment evidence as moot

because the evidence was "not central to the court's conclusions, and sustaining the parties' objections would not change the result").

## ANALYSIS

I will now examine each cause of action asserted by Obaro to determine if summary judgment is appropriate.

**A.   WRONGFUL FORECLOSURE**

Obaro seeks to set aside or void the foreclosure sale of the Unit. I construe this as a wrongful foreclosure claim under Texas law.

To prevail on a wrongful foreclosure claim, Obaro must establish: "(1) a defect in the foreclosure sale proceedings; (2) a *grossly inadequate selling price*; and (3) a causal connection between the defect and the *grossly inadequate selling price*." *Charter Nat'l Bank–Houston v. Stevens*, 781 S.W.2d 368, 371 (Tex. App.—Houston [14th Dist.] 1989, writ denied). Summary judgment is proper because Obaro has failed to present any evidence creating a genuine issue of material fact on the second element: grossly inadequate selling price.

Under Texas law, "a grossly inadequate price would have to be so little as 'to shock a correct mind.'" *Fed. Deposit Ins. Corp. v. Blanton*, 918 F.2d 524, 531 (5th Cir. 1990) (quoting *Richardson v. Kent,* 47 S.W.2d 420, 425 (Tex. Civ. App.—Dallas 1932, no writ)). To determine whether the consideration received is grossly inadequate, "[t]he cash consideration paid at foreclosure sale for the land must be compared with or balanced against the fair cash market value of the property *at the time of the sale.*" *Gainesville Oil & Gas Co. v. Farm Credit Bank of Tex.*, 847 S.W.2d 655, 663 (Tex. App.—Texarkana 1993, no writ) (emphasis added). The price paid for the Unit at the January 3, 2023 foreclosure sale was $171,000. So what evidence is there as to the market value of the Unit on January 3, 2023?

In an attempt to show that the market value of the Unit as of January 3, 2023, exceeded $400,000, Obaro offers three pieces of evidence. The first two are print-outs of internet pages from homes.com and realtor.com, providing a purported value of the Unit as of August 27, 2025, at $417,506 and $413,800,

respectively. There are two insurmountable problems with this evidence. First, as already discussed, the print-outs are inadmissible hearsay. Second, even if I were to consider the purported valuations, the print-outs simply list an estimated value as of August 27, 2025, more than two and a half years *after* the date of the foreclosure sale. This evidence offers no assistance in determining the value of the Unit as of January 3, 2023, the date of the foreclosure sale.

The third piece of evidence Obaro relies on is a 2024 valuation of the Unit from the Harris Central Appraisal District. *See* Dkt. 36-6 at 3. That valuation pegs the Unit's market price as $410,414 in 2024. As was the case with the commercial valuation print-outs, evidence of the Unit's value in 2024 does not shed light on what the Unit was worth at the time of the foreclosure sale in January 2023. Because Obaro has not presented any admissible evidence "regarding the fair market value of the property at the time of the [foreclosure] sale [in January 2023] . . . , there is no evidence to raise a fact issue tending to prove the consideration received for the property was grossly inadequate." *Benitez v. Perales*, No. 01-00-00211, 2002 WL 1981189, at *6 (Tex. App.—Houston [1st Dist.] Aug. 29, 2002, no pet.).

I could stop there. But, given that Obaro submitted the Harris Central Appraisal District's 2024 valuation, my curiosity persuaded me to dig a little deeper. I looked up the Harris Central Appraisal District's 2023 valuation. That provides the appraisal district's 2023 estimated market value of the Unit at $340,353.[1] Even this figure does not help Obaro avoid summary judgment on the wrongful foreclosure claim. A $340,353 fair market value on the date of foreclosure and an actual sales price of $171,000 at foreclosure means that the Unit sold for

---

[1] *See* https://hcad.org/property-search/property-search (choose "Account Number"; enter "1301020010054" into the search bar; click the search icon; click the property listing; click "2025" next to the property address and then select "2023" from the dropdown menu). I can "take judicial notice of [the Harris Central Appraisal District's] valuations under Federal Rule of Evidence 201 as a public record not subject to reasonable dispute." *Mosely*, 2022 WL 1750635, at *3.

6

50.24 percent of its fair market value. Texas law provides, as a matter of law, that a foreclosure sale price exceeding 50 percent of the fair market value is not grossly inadequate. *See Moreno v. Valencia,* No. 13-23-00404-cv, 2025 WL 1074956, at *4 (Tex. App.—Corpus Christi–Edinburg Apr. 10, 2025, no pet.); *Terra XXI, Ltd. v. Harmon,* 279 S.W.3d 781, 788 (Tex. App.—Amarillo 2007, pet. denied); *Kent*, 47 S.W.3d at 425. In *Water Dynamics, Ltd. v. HSBC Bank USA, Nat. Ass'n*, 509 F. App'x 367, 368–69 (5th Cir. 2013), the Fifth Circuit, applying Texas law, held that a piece of property that sold for 52 percent of its fair market value at a foreclosure sale was not, as a legal matter, grossly inadequate. The result should be no different here. The Association and Fairport are entitled to summary judgment on the wrongful foreclosure claim.

**B.     BREACH OF FIDUCIARY DUTY**

Obaro brings a fiduciary duty claim against the Association, arguing that the Association breached its duty of care by appointing Tomlinson as trustee after she had sent several default letters to Obaro.[2] Obaro calls this "an open conflict of interest." Dkt. 36 at 6. Obaro also claims that the Association breached its fiduciary duty because Tomlinson, as the trustee, "acted apparently without any due oversight." *Id.*

Under Texas law, "[t]he elements of a breach of fiduciary duty claim are: (1) a fiduciary relationship between the plaintiff and defendant; (2) the defendant must have breached his fiduciary duty to the plaintiff; and (3) the defendant's breach must result in injury to the plaintiff or benefit to the defendant." *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 283 (5th Cir. 2007) (quoting *Jones v. Blume*, 196 S.W.3d 440, 447 (Tex. App.—Dallas 2006, pet. denied)).

Even if I assume that the Association owed Obaro a fiduciary duty, there is no evidence that the Association breached that duty. A trustee becomes a special agent for both parties, and she "must act with absolute impartiality and fairness to

---

[2] The Declaration allows the Association to appoint a trustee to carry out a foreclosure sale and to issue a foreclosure deed. *See* Dkt. 34-3 at 18.

7

the grantor in performing the powers vested in [her] by the deed of trust." *Hammonds v. Holmes*, 559 S.W.2d 345, 347 (Tex. 1977). The trustee must "see that no fraud is practiced detrimental to [the grantor's] interests, and that no improper bid is accepted, and that the property is not knocked off without giving fair opportunity for it to bring its reasonable value." *Fuller v. O'Neal*, 6 S.W. 181, 181 (Tex. 1887).

Obaro does not claim that the Association or Tomlinson failed to follow the foreclosure sale process outlined by the Declaration and Texas law, or failed to conduct the foreclosure sale in a fair manner. Instead, Obaro simply asserts that there is a conflict of interest because Tomlinson sent the notice of default *and* served as the trustee who conducted the foreclosure sale. This argument is dead on arrival. Texas appellate courts have uniformly rejected the argument that a trustee breaches a duty of care by issuing a default notice and also serving as trustee or substitute trustee for a foreclosure sale. *See Rodriguez v. Reyes*, No. 01-22-00652, 2023 WL 4937502, at *4 (Tex. App.—Houston [1st Dist.] Aug. 3, 2023, no pet.) ("To the extent [the property owners] argue the substitute trustee's sending the default notice on behalf of the [lenders] violated his duty to act with impartiality and fairness, a substitute trustee does not breach this duty by also representing a lender or beneficiary in his capacity as an attorney."); *Powell v. Stacy*, 117 S.W.3d 70, 74 (Tex. App.—Fort Worth 2003, no pet.) ("In this case, the substitute trustee abided by the terms of the deed of trust and [the Texas Property Code]. The fact that he was also representing the [lenders] does not show that he breached his duty of fairness and impartiality.").

Obaro also maintains that the Association breached its fiduciary duty by failing to oversee Tomlinson's debt collection efforts properly. This argument, likewise, goes nowhere. As permitted by the Declaration and the Texas Property Code, the Association appointed Tomlinson to act as trustee. In that role, Tomlinson was required to act impartially and adhere to the foreclosure sale process outlined by the governing document and applicable statute. There is no

8

claim that Tomlinson failed to do so. Given that Tomlinson conducted a lawful foreclosure sale with no irregularities or defects, I am hard-pressed to understand what oversight the Association should have exercised over Tomlinson. Importantly, Obaro offers no explanation—or, more importantly, evidence—on this point. The Association is, therefore, entitled to summary judgment against Obaro on the breach of fiduciary duty claim.

### C.   NEGLIGENCE

To prevail on a negligence claim, a plaintiff must prove that (1) the defendant owed a legal duty to the plaintiff; (2) the defendant breached that duty; and (3) the breach proximately caused the plaintiff's injury. *Elephant Ins. Co. v. Kenyon*, 644 S.W.3d 137, 144 (Tex. 2022). Obaro's negligence claim does not survive summary judgment because he has failed to present any evidence creating a genuine issue of material fact that the Association breached a duty.

In the Complaint, Obaro claims that the Association owed him the following duties: "appointing a trustee for a foreclosure sale; monitoring and moderating the billing practices of [] appointed attorneys or other agents; choosing such agents in such a way that avoids obvious and compromising conflicts; investigating, and . . . holding its appointed agents accountable when custodians such as Plaintiff allege malpractice or abuse." Dkt. 1 at 9. Even if these are duties that the Association owed Obaro, the summary judgment record is devoid of any evidence suggesting that the Association breached these duties. The Association is entitled to summary judgment on Obaro's negligence claim.

### D.   BREACH OF CONTRACT

Obaro's final cause of action is for breach of contract. To survive summary judgment on his breach of contract claim, Obaro must create a genuine issue of material fact as to the following four elements: "(1) formation of a valid contract; (2) performance by [Obaro]; (3) breach by the [Association]; and (4) [Obaro] sustained damages as a result of the breach." *S & S Emergency Training Sols., Inc. v. Elliott*, 564 S.W.3d 843, 847 (Tex. 2018) (quotation omitted).

The parties agree that there is a valid contract: the Declaration. Obaro argues that he performed under the Declaration, but that the Association breached the agreement by prohibiting him from making partial payments on his account. On this point, Obaro presents evidence that he sent several checks to the Association in 2021 that were returned uncashed. *See* Dkt. 36-8 at 4. Obaro further contends that the Association's failure to credit these checks to his account led the Association to improperly consider his account as delinquent. He claims that the Association's subsequent foreclosure proceedings represent the damage he suffered as a result of the breach.

The Association does not dispute that it rejected several of Obaro's payments. According to the Association, its "refusal to accept partial payments once an account is delinquent and thus accelerated is contemplated and allowed by the Declaration[]." Dkt. 37 at 6.

The Association is not entitled to summary judgment on Obaro's breach of contract claim because a genuine issue of material fact exists as to whether the Association breached the Declaration by refusing to accept Obaro's partial payments. Although the Declaration provides that a property owner "lose[s] the privilege of paying the annual assessment in monthly installments" if the Association has accelerated a property owner's unpaid installments, Dkt. 34-3 at 17, the Association acknowledged at the summary judgment hearing that it did not accelerate Obaro's unpaid installments. This is important because the Declaration does not contain any provision that allows Mosaic to unconditionally deny Obaro's partial payments. To the contrary, the Declaration specifically contemplates that Obaro can make partial payments on his account. The Declaration states: "If part payment of assessments and related charges is made, the amount received shall be applied" in a particular order to outstanding charges. *Id.* Accordingly, a fact issue remains on Obaro's breach of contract claim.

## CONCLUSION

The Association's motion for summary judgment is granted as to the wrongful foreclosure, negligence, and breach of fiduciary duty claims; it is denied as to Obaro's breach of contract claim. I do not address Obaro's fifth claim for relief—Preservation of Redemption Right—because the Association did not move for summary judgment on that claim.

The trial of this case will commence on Wednesday, January 28, 2026, at 9 am. I will issue a more detailed pretrial order in the next few weeks.

SIGNED on this 27th day of October 2025.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE