United States District Court
Southern District of Texas

**ENTERED**

June 18, 2026

Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| DUKE OBARO, | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 4:23-cv-01249 |
| | § | |
| MOSAIC RESIDENTIAL NORTH | § | |
| CONDOMINIUM ASSOCIATION, *et* | § | |
| *al.*, | § | |
| | § | |
| Defendants. | § | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Plaintiff Duke Obaro brought this action against Defendants Mosaic Residential North Condominiums Association (the "Association"); Fairport Ventures, LLC;[1] and John Does 1–5.[2] I held a bench trial at the Houston federal courthouse on January 27, 2026, and January 29, 2026.[3] Three witnesses testified live at the trial, and I admitted 48 exhibits into evidence. These findings of fact and conclusions of law address all claims raised by the parties.

## THE PARTIES AND THE CLAIMS

The Mosaic Residential North Condominium (the "Mosaic") is a high-rise luxury condominium in Houston, Texas. Obaro owned a residential unit at the Mosaic. This dispute arises out of a non-judicial foreclosure sale of that unit conducted by the Association.

Obaro brought the following causes of action against the Association: (1) wrongful foreclosure; (2) negligence; (3) breach of contract; (4) breach of fiduciary duty of care; and (5) preservation of redemption right. Prior to trial, I

---

[1] In accordance with a stipulation filed with the court, Obaro's claims against Fairport were dismissed with prejudice prior to trial. *See* Dkt. 108.

[2] Because Obaro never identified John Does 1–5 and did not litigate any claims against John Does 1-5 at trial, all claims against John Does 1–5 have been abandoned.

[3] The parties stipulated to a bench trial. *See* Dkt. 109.

granted summary judgment for the Association on Obaro's claims for wrongful foreclosure, negligence, and breach of fiduciary duty. *See* Dkt. 58. At trial, Obaro proceeded only on the breach of contract claim.[4]

In a nutshell, Obaro claims that the Association breached a contractual agreement between the parties by failing to accept assessment payments he made in January and February 2022. The Association disputes that it ever refused to accept a payment from Obaro.

## LEGAL STANDARD

"It is the function of the district court at bench trial to listen to the testimony of each witness, weigh his or her credibility, and make factual findings." *Garr v. W. Sizzler*, No. 00-31240, 2001 WL 1131869, at *1 (5th Cir. Sep. 18, 2001). "[T]he court must find the facts specially and state its conclusions of law separately. The findings and conclusions may be stated on the record after the close of the evidence or may appear in an opinion or a memorandum of decision filed by the court." Fed. R. Civ. P. 52(a)(1). "The court need only make brief, definite, and pertinent findings and conclusions upon contested matters. It need not make findings on stipulated or undisputed facts, although it may have to make a finding if conflicting inferences can be drawn from the undisputed facts." 9C Wright & Miller, Fed. Prac. & Proc. § 2579 (3d ed. 2008) (cleaned up).

## FINDINGS OF FACT

After considering the evidence, the relevant authorities, and the parties' arguments, I make the following findings of fact pursuant to Rule 52(a)(1):

1.      In 2014, Obaro purchased Unit 11002 (the "Unit") at the Mosaic.

2.      The Association is the property owners' association for the Mosaic. The Association is governed by its Board of Directors.

3.      All condominium owners at the Mosaic, including Obaro, are subject to the Declaration of Condominium for Mosaic Residential North Condominium

---

[4] At a post-trial hearing, Obaro confirmed that he has withdrawn his claim against the Association for preservation of redemption rights. *See* Dkt. 125 at 3.

(the "Declaration"). The Declaration requires owners to pay, among other things: (i) annual assessments or charges, (ii) special assessments relative to the community, and (iii) specific assessments relative to each unit. The Declaration creates a continuing lien on each unit to secure payment of the assessments and other charges, including interest, late fees, legal fees, collection costs, reimbursements, delinquency, and other charges. The Declaration gives the Association the right to foreclose on the lien in accordance with Texas law.

4. In April 2011, Obaro provided Deola T. Ali, his close friend and counsel, with a Power of Attorney ("POA"). Pursuant to the POA, Ali had full power and authority to manage Obaro's real property, including paying his assessments at the Mosaic and dealing with the Association on amounts due. Ali testified that he was the only person who communicated with the Association and its attorneys on Obaro's behalf. Obaro did not communicate directly with the Association or its attorneys.

5. Ali paid Obaro's assessments from Ali's personal checking account held at Chase Bank, which Obaro would fund from time to time as needed. Ali would sometimes use his own funds for various payments to the Association if funds in the account were insufficient or not timely deposited by Obaro.

6. During his ownership of the Unit, Obaro had repeated problems timely paying amounts due to the Association. On February 4, 2015, less than a year into Obaro's ownership of the Unit, Vivian Tomlinson, outside counsel hired by the Association to assist with the collection of past due maintenance assessments and related charges, sent Obaro a notice of default. The default was cured because no further action was taken on the February 4, 2015 default notice.

7. Obaro's account had a zero balance on October 17, 2018. That was the last time Obaro's account had a zero balance until the Association foreclosed on the Unit on January 3, 2023.

8. In July 2019, Tomlinson sent Obaro a letter asking him to pay an outstanding balance on his account. Tomlinson followed up with similar letters in

the Fall of 2019, 2020, and 2021. Although Obaro made partial payments from time to time, he never fully paid the outstanding amounts due. The partial payments Obaro made were deposited and applied to Obaro's account.

9.    Ali testified that he requested, on Obaro's behalf, that Chase Bank issue checks to the Association in January and February 2022 to cover the monthly assessment charges. Obaro insists that the Association refused to accept those partial payments. The Association vehemently denies that it rejected or refused any payments from Obaro in January or February 2022. Matt Maier, the general manager of the Mosaic, testified that he was not aware of any payments from Obaro that the Association rejected in 2022 or at any other time. Tomlinson similarly testified that she, on behalf of the Association, did not reject any payments allegedly tendered for Obaro in 2022.

10.   At no time in 2022 did Obaro (or Ali) complain to the Association or Tomlinson that Obaro's January and February 2022 payments had been rejected or returned.

11.   At trial, Obaro did not present any documentation to support his assertion that the Association rejected payments in January and February 2022. Although Ali testified that he requested payments to the Association be made from a Chase Bank account that he solely controlled, he presented no returned checks or bank statements reflecting that the payments had been made and returned. Ali claimed that shortly after this lawsuit was filed, he asked Chase Bank for copies of statements and other confirming documents but was told that the bank did not have records that go that far back in time. This lawsuit was filed in April 2023, making the relevant Chase Bank statements less than 14 months old at the time Obaro filed suit.

12.   Overall, I find the testimony from Maier and Tomlinson that the Association did not reject or refuse any payments from Obaro in January or February 2022 credible. I do not find Ali's testimony that the Association rejected payments from Obaro in January or February 2022 credible, especially because

4

Obaro failed to present a shred of documentary evidence at trial from Chase Bank reflecting: (1) that Obaro made payments to the Association in January and February 2022; and (2) that the Association rejected such payments.

13.     It is undisputed that Obaro did not make any payments to the Association from March 2022 through December 2022.

14.     On April 12, 2022, Tomlinson sent Obaro a letter, notifying him that he had an outstanding balance in the amount of $6,470.85 for unpaid maintenance assessments, late fees, collection costs, and legal fees. Tomlinson requested Obaro pay the outstanding amount due within 10 days or face foreclosure.

15.     On September 16, 2022, Tomlinson notified Obaro in writing that he owed $9,875.98 for unpaid maintenance assessments, late fees, collection costs, and legal fees. Tomlinson threatened to foreclose on the Unit unless Obaro paid the outstanding amount in full within 45 days.

16.     On December 9, 2022, Tomlinson sent Obaro another letter, informing him that the Unit would be sold at a foreclosure sale on January 3, 2023, unless Obaro paid his debt before that date. Obaro did not pay the amounts due by that date.

17.     The foreclosure sale occurred on January 3, 2023. Fairport Ventures, LLC purchased the Unit for $171,000. The purchase price satisfied the lien and associated sale costs. After the sale, Tomlinson sent Obaro a letter detailing the outcome of the sale and informed him of the excess proceeds and his right to redemption. Obaro did not exercise his right to redeem the property. The $155,702.86 in excess proceeds have been deposited into the court's registry and remain there today.

## CONCLUSIONS OF LAW

1.     Obaro's sole cause of action is for breach of contract. Obaro argues that the Association breached the Declaration—which both parties acknowledge is a valid contract—by prohibiting him from making partial payments on his account in January and February 2022. To prevail on his breach of contract claim, Obaro

must establish four elements: "(1) formation of a valid contract; (2) performance by [Obaro]; (3) breach by the [Association]; and (4) [Obaro] sustained damages as a result of the breach." *S & S Emergency Training Sols., Inc. v. Elliott*, 564 S.W.3d 843, 847 (Tex. 2018) (quotation omitted). Obaro has the burden to prove by a preponderance of the evidence each element of a breach of contract action. *See Hooper v. Generations Cmty. Fed. Credit Union*, No. 04-12-00080-CV, 2013 WL 2645111, at *1 (Tex. App.—San Antonio June 12, 2013, no pet.).

2.    Obaro's breach of contract claim fails because he has not carried his burden to establish by a preponderance of the evidence that the Association breached the Declaration. This is the third element of a breach of contract claim. As explained above, I find Maier's and Tomlinson's testimony that the Association did not reject or refuse any payments from Obaro in January or February 2022 to be highly credible.

3.    Ali's trial testimony is the only evidence Obaro presented that the Association rejected payments from him in January or February 2022. But Ali's conclusory testimony is unpersuasive.

4.    The United States Supreme Court has noted that it is a "venerable rule that a factfinder may draw an adverse inference when a party fails to produce highly probative evidence that it could readily obtain if in fact such evidence exists." *Alexander v. S.C. State Conf. of the NAACP*, 602 U.S. 1, 36 (2024). "The production of weak evidence when strong is available can lead only to the conclusion that the strong would have been adverse. Silence then becomes evidence of the most convincing character." *Interstate Cir. v. United States*, 306 U.S. 208, 226 (1939) (cleaned up).

5.    Chase Bank records would conclusively establish whether: (1) Obaro made payments in January and February 2022; and (2) the Association rejected such payments. Obaro's failure to introduce documents or bank statements from the Chase Bank account—that was solely under Ali's control and from which Ali claims payments were made but rejected—raises an adverse inference that such

documents do not support Obaro's claim that the Association rejected payments in January and February 2022.

6.    The Association did not breach the Declaration.

7.    Even if the Association had breached the Declaration by rejecting payments from Obaro in January and February 2022, Obaro's breach of contract claim would still fail because he has failed to establish, by a preponderance of the evidence, that he sustained damages as a result of the breach. This is the fourth element of a breach of contract claim. Had Obaro made partial payments that were rejected by the Association in January and February 2022, Obaro would still have been obligated to continue making monthly assessment payments for the remainder of 2022. The Declaration provides that: "No Owner may exempt him or herself from liability for or otherwise withhold payment of assessments for any reason whatsoever, including, but not limited to, . . . the Association's failure to perform its obligations required hereunder." Trial Exhibit 1 at p.12. Because Obaro failed to make contractually mandated payments from March to December 2022, he was in default of the Declaration, and the Association properly foreclosed on the Unit.

## CONCLUSION

For the reasons discussed above, the Association is entitled to a take-nothing judgment in its favor. I will issue a final judgment separately.

SIGNED this ___ day of June 2026.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE

7